# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:19-CV-25019-ALTONAGA/Goodman**

INFINITY GLOBAL CONSULTING GROUP,
INC., JOSEPH M. VAZQUEZ III, and
JOSEPH M. VAZQUEZ III, derivatively, as a shareholder,
and on behalf of, TRIMAX Corporation,

    *Plaintiffs,*

vs.

TILRAY INC., PRIVATEER HOLDINGS INC.,
LEFT COAST VENTURES, INC.,
EKO HOLDINGS LLC, BRETT CUMMINGS,
HUGO SAAVEDRA, DEBRA SAAVEDRA, and
EQUITABLE TRANSITIONS INC.,

    *Defendants.*
_____/

**DECLARATION OF JOSEPH M. VAZQUEZ III**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR RECUSAL OR DISQUALIFICATION**
**OF U.S. DISTRICT COURT JUDGE CECILIA M. ALTONAGA**

I, Joseph M. Vazquez III, do hereby declare, under penalty of perjury, the following:

1. My name is Joseph M. Vazquez III ("Vazquez"), I am over the age of eighteen, have personal knowledge of the factual statements made herein and I make this Declaration voluntarily and to the best of my knowledge in support of Plaintiffs' Motion for Recusal or Disqualification of U.S. District Court Judge Cecilia M. Altonaga.

2. I am the president and corporate representative of plaintiff, INFINITY GLOBAL CONSULTING GROUP, INC. ("Infinity") in the above-styled case. I am also a plaintiff individually and derivatively as a shareholder, and on behalf of, TRIMAX CORPORATION ("Trimax" or collectively with Infinity and Vazquez, the "Plaintiffs").

3. On December 13, 2019, I learned and confirmed that attorney Brian Toth, counsel for defendants TILRAY INC. and PRIVATEER HOLDINGS INC., is a former law clerk for U.S. District Court Judge Cecilia M. Altonaga, who is currently the Judge in my case.

4. On December 13, 2019, Mr. Toth emailed Plaintiffs' counsel, Peter A. Gonzalez, stating that "because there is no objective reasonable basis to suggest that my having clerked for Judge Altonaga in May 2009--June 2010 makes this a proceeding in which her impartiality might reasonably be questioned, we oppose your clients' request to disqualify her from this case."

5. After speaking with me regarding defense counsel's history and relationship with Judge Altonaga, and learning of Mr. Toth's December 13th email, pursuant to my request, Plaintiffs' counsel responded via email to Mr. Toth on December 17, 2019, stating:

> Brian,
>
> Your opinion that there is no objectively reasonable basis to suggest that you having clerked for Judge Altonaga for over a year cannot bring Judge Altonaga's impartiality into question is noted. However, I don't believe you have fully and accurately stated the legal standard for disqualification or recusal of a judge.
>
> Judge Altonaga is an excellent U.S. District Court Judge. Personally, I'm not questioning her impartiality in this case (or in any other matter). That's not the issue. My feelings are not relevant. It is also not a question of how you or the judge feel; it is a question of what feeling resides in my client's mind and the basis for such feeling. *Livingston v. State*, 441 So.2d 1083, 1086 (Fla. 1983) *quoting State ex rel. Brown v. Dewell*, 131 Fla. 566, 179 So. 695, 697-98 (1938).
>
> A quick Google search of your name and Judge Altonaga's name popped up several links that make reference to both of you and your former professional relationship. Naturally, this concerns my client, Joseph Vazquez. It would reasonably concern any litigant in any case to learn that the lawyer for the opposing parties spent over a year clerking for the very judge who will preside over the litigant's case and make critically important decisions that will impact the litigants rights, claims, and financial condition.
>
> In light of your connection with Judge Altonaga in having clerked for her for over a year, my client, Mr. Vazquez, personally and as the corporate representative of Infinity Global Consulting Group, Inc., has serious concerns that Judge Altonaga may not be able to be impartial and may perhaps even prejudge aspects of this case. *In Re McMillan*, 797 So.2d 560 (Fla. 2001) (The impartiality

2

of the trial judge must be beyond question). If my client has a reasonable fear that neutrality in this cause is in doubt and is convinced that he will not receive a fair trial from Judge Altonaga, then that may be sufficient. *State v. Steele*, 348 So.2d 398 (Fla. 3rd DCA 1977) (No judge under any circumstances is warranted in sitting in trial of cause whose neutrality is shadowed or even questioned).

My understanding of the law is that all doubts whether a judge's impartiality might be reasonably questioned by others must be resolved in favor of disqualification. *U.S. v. Craig*, 875 F.Supp. 816 (U.S. Dist. Ct., S.D. Fla. 1994).

Of course, your stated opposition to having a different judge preside over this case only raises additional concerns for my client. My primary concern is my client, and I want my client to feel secure that there is no connection between the court and counsel that in my client's mind may compromise the integrity of the judicial process or give the appearance that impartiality may be or become an issue.

For example, my client was curious to learn (1) how you obtained your clerkship with Judge Altonaga; (2) whether you had a previous connection to or relationship with Judge Altonaga before you began clerking for her; (3) how often would you interact with Judge Altonaga during the over one year period when you clerked for her (and after clerking for her); (4) would you have lunch or dinner or otherwise socialize with Judge Altonaga during and since the end of your clerkship; (5) would you socialize with Judge Altonaga outside of the work environment during or since your clerkship; (6) did spouses or significant others or other family members of you and Judge Altonaga ever spend time together socially during or since your clerkship; (7) are both of you members of any organizations where you have interacted during or since the time of your clerkship; (8) do you have Judge Altonaga's cell phone number or personal email address; (9) does Judge Altonaga have your cell phone number or personal email address; (10) have you ever been to Judge Altonaga's home or has she visited your home; (11) have you interacted with Judge Altonaga or she with you on any social media; (12) has Judge Altonaga or anyone from her chambers or staff ever referred you a case or recommended you as a lawyer to a potential client; as concerns Judge Altonaga's current staff, what's the response to the questions or concerns in 1 through 12 above.

3

> These 13 items are among the various questions, issues and concerns that my client has raised after learning of your connection to Judge Altonaga, and it's not surprising. Indeed, it would only be surprising if my client had zero questions and concerns after learning of your history with and ties to Judge Altonaga. Perhaps if you respond to each of the 13 questions/concerns outlined above, I can then have a conversation with my client regarding your responses. That may be helpful in resolving this pending issue.
>
> Please reconsider your opposition to switching to a different judge. It may avoid the time, trouble and expense related to litigating the disqualification question.
>
> Thank you for your anticipated cooperation in at least thinking about reconsidering your current position. At your earliest opportunity, please let me know if you have a change of heart.
>
> Sincerely,
> **PETER A. GONZÁLEZ**

6. After Mr. Toth failed and refused to answer the 13 questions and concerns identified in Plaintiffs' counsel's December 17, 2019 email to Mr. Toth, on December 19, 2019, Plaintiffs' counsel again emailed Mr. Toth requesting his responses to the 13 items identified in Plaintiffs' counsel's December 17, 2019 email to Mr. Toth, requesting that Mr. Toth provide answers by no later than December 23, 2019. Pursuant to my specific request, Plaintiffs' counsel also sent a second email to Mr. Toth on December 19, 2019 requesting that he answer two (2) additional questions regarding whether he had ever given, received and/or exchanged gifts and/or greeting cards with Judge Altonaga.

7. Despite Plaintiffs requesting that Mr. Toth respond to no fewer than 15 questions and concerns regarding his clerkship with Judge Altonaga and any existing and/or ongoing personal friendship with Judge Altonaga that may very well have an impact on Judge Altonaga's impartiality in this case, I learned on January 6, 2020 that my attorneys received no answers to

4

any of the 15 separate written questions asked of Mr. Toth. This is very disconcerting to me, individually, and as the corporate representative of the Plaintiff entities in this case.

8. Today, I discovered that not only did Mr. Toth serve as a law clerk for Judge Altonaga for over a year, but that since his clerkship with Judge Altonaga, Mr. Toth has also moderated a continuing legal education course and holiday party where Judge Altonaga was a panelist as reflected by the Daily Business Review's Judicial Holiday Party online flyer (the "DBR Party Flyer") attached as Exhibit C to the Recusal Motion. The DBR Party Flyer evidences that on December 10, 2015, at least five (5) years after Mr. Toth concluded his lengthy clerkship with Judge Altonaga, Mr. Toth moderated the Daily Business Review's Judicial Holiday Party event titled "An Evening of Drinks, Cheer, Friends and Laughs" which included as a panelist, Judge Altonaga along with the Magistrate in this case, the Honorable Jonathan Goodman. This tells me that Mr. Toth and Judge Altonaga have continued to maintain a relationship and ties well beyond Mr. Toth's clerkship that ended in 2010, that may impact Plaintiffs ability to receive a fair trial.

9. In light of learning of these additional facts, Plaintiffs fear that Judge Altonaga is not impartial or will not be impartial as concerns Plaintiffs' claims in this case, may favor Mr. Toth and/or the Defendants he represents in this case, and may prejudge certain issues or the merits of this case.

10. On January 6, 2020, I also learned that Judge Altonaga had not disclosed to Plaintiffs, through their counsel, that defense counsel, Mr. Toth, had been Judge Altonaga's law clerk for over a year. I believe that Judge Altonaga should have promptly disclosed the relationship and the court's history with Mr. Toth to my attorneys in this case. On January 6, 2020, I read portions of the Florida Code of Judicial Conduct, and my understanding after

5

reading it is that Judge Altonaga should have disclosed the court's ties, history and relationship with Mr. Toth to my attorneys, but that did not happen. The fact that my attorneys did not receive such disclosure from the court concerns me very much. Furthermore, Mr. Toth and Judge Altonaga have never disclosed to the Plaintiffs the fact that Judge Altonaga was a panelist and Mr. Toth was a moderator as reflected by the DBR Party Flyer. The fact that Mr. Toth has so adamantly and repeatedly refused to answer any of the 15 different questions and concerns that I requested be sent to Mr. Toth by my attorneys is also very troubling to me. Mr. Toth's lack of cooperation and refusal to provide any information regarding his relationship with Judge Altonaga strongly suggests to me that Mr. Toth wants to conceal additional facts that would strengthen Plaintiffs' recusal motion.

11. Today's discovery of this DBR Party Flyer, combined with learning of the Florida Code of Judicial Conduct and my reading portions of it today that indicate that prompt disclosure by the court of the relationship with Mr. Toth was warranted, causes me and the Plaintiffs great concern and causes me and the Plaintiffs to fear that Plaintiffs will never get a fair trial by Judge Altonaga in this case. Learning today that Mr. Toth has refused to answer any of the 15 questions and concerns that all of the Plaintiffs have in light of Mr. Toth's history and relationship with Judge Altonaga only deepens my serious concerns over the court's ability to impartially preside over my lawsuit in this case, and increases Plaintiffs' fears that Judge Altonaga may have a bias in favor of Mr. Toth that will adversely impact my rights and Plaintiffs' rights and claims in this case.

12. I believe that the existence of a long-standing professional relationship of this nature between Judge Altonaga and Mr. Toth, their former close work relationship where Judge

6

Altonaga was literally Mr. Toth's boss, working in the same office, and the fact that both of them never disclosed any of it to me, through my counsel, seems improper and unfair to me.

13. I understand that Judge Altonaga is supposed to be neutral and make decisions in my case in an impartial way, but I, and the other Plaintiffs, fear that none of the Plaintiffs will receive a fair trial from Judge Altonaga, who is currently presiding over Plaintiffs' case. I, and the other Plaintiffs, believe that in Plaintiffs' case, Judge Altonaga may favor Mr. Toth and the defendants he represents, may have a bias against Plaintiffs and has prejudged all aspects of Plaintiffs case.

14. I have asked my lawyers to prepare a motion to remove or disqualify Judge Altonaga from this case. After reviewing the motion to recuse or disqualify Judge Altonaga from this case, I have no reason to believe that Judge Altonaga is capable of being impartial in this litigation. My intention is not to offend Judge Altonaga. I am simply being totally honest and transparent with the court and defendants' counsel regarding my concerns, fears and beliefs arising from facts that I have uncovered and discovered, without any disclosure of such facts from Mr. Toth or Judge Altonaga.

15. I make this Declaration in good faith and under penalty of perjury.

FURTHER DECLARANT SAYETH NOT.

[SIGNATURES ON NEXT PAGE]

Under penalties of perjury, as provided for under Florida Statute § 92.525 and 28 U.S.C. § 1746, I declare that I have read the foregoing Declaration and that the facts stated in it are true.

1/06/2020
Date

_____
Declarant: JOSEPH M. VAZQUEZ III, individually

1/06/2020
Date

_____
Declarant: JOSEPH M. VAZQUEZ III, as corporate representative of INFINITY GLOBAL CONSULTING GROUP, INC

1/06/2020
Date

_____
Declarant: JOSEPH M. VAZQUEZ III, as corporate representative of TRIMAX CORPORATION