# EXHIBIT L

**EQUITABLE TRANSITIONS, INC.**
**444 West Ocean Blvd., Suite 1400**
**Long Beach, CA 90802**

## NOTICE OF ASSIGNMENT FOR THE BENEFIT OF THE CREDITORS OF SAAVY NATURALS, INC.

An Assignment for the Benefit of the Creditors concerning the debtor listed above and below was made on December 24, 2018. You may be a creditor of the debtor. This Notice lists important deadlines. You may want to consult an attorney to protect your rights.

NOTE: Equitable Transitions, Inc. and its employees CANNOT give legal advice.

ASSIGNOR: SAAVY NATURALS, INC.

Assignor Tax-payer I.D. No.: 81-4928658

| | **ASSIGNEE:**<br>Equitable Transitions, Inc.<br>444 West Ocean Blvd., Suite 1400<br>Long Beach, CA 90802<br>Telephone No.: (562) 435-0800 |
|---|---|

### DEADLINES

Claims must be received by Equitable Transitions, Inc., by the following deadline:

**DEADLINE TO SUBMIT PROOF OF CLAIM: JUNE 2, 2019**

| **Proofs of Claim Forms and other communications must be sent to:**<br>EQUITABLE TRANSITIONS, INC.<br>444 West Ocean Blvd., Suite 1400<br>Long Beach, CA 90802<br>Ph.# (562) 435-0800<br>Fax#: (562) 435-6335<br>e-mail: ahaberbush@etinsolvency.com | **EQUITABLE TRANSITIONS, INC.**<br><br>By: _____<br>ALEXANDER HABERBUSH, Estate Administrator |
|---|---|
| Hours Open: 9:00 a.m.-5:00 p.m. | Dated: JANUARY 4, 2019 |



## GENERAL ASSIGNMENT

THIS ASSIGNMENT is effective December 24, 2018, between SAAVY NATURALS, INC., (hereinafter referred to as "ASSIGNOR") and assignee for the benefit of ASSIGNOR'S creditors, EQUITABLE TRANSITIONS, INC., a California corporation (hereinafter referred to as "ET").

### RECITALS:

ASSIGNOR is indebted to diverse persons and is desirous of providing payment to the same, so far as in its power, by an assignment of all its property for that purpose.

NOW, THEREFORE, ASSIGNOR, for a valuable consideration, receipt of which is hereby acknowledged, does hereby make the following General Assignment for the benefit of ASSIGNOR'S creditors to ET, under the following terms and conditions:

### 1.
### ASSIGNMENT OF PROPERTY

1.1   To the fullest extent allowed by law, ASSIGNOR does hereby grant, bargain, sell, assign, and transfer to ET, its successors and assigns, in trust for the ultimate benefit of ASSIGNOR'S creditors generally, all of the property rights, titles and interests in the assets of the ASSIGNOR of every kind and nature and wheresoever situated, whether in possession, reversion, remainder, or expectancy, both real and personal, and any interest or equity therein not exempt from execution; including without limitations all inventory, merchandise, furniture, fixtures, machinery, equipment, raw materials, work in process inventory, refunds, book accounts, books, accounts receivable, cash on hand, intellectual property, general intangibles, all choses in action (personal or otherwise), insurance policies, real property and all other property of every kind and nature owned by the ASSIGNOR, and without limiting the generality of the foregoing, including all of the assets pertaining to that certain company known as SAAVY NATURALS, INC. ("Assigned Property"). This instrument transfers all legal title and possession of all of ASSIGNOR'S assets.

1.2   This Assignment constitutes a grant deed to all real property owned by ASSIGNOR, whether or not said real property is specifically described herein. ASSIGNOR agrees to execute such other and further documents as are necessary and appropriate, determined by ET in its sole discretion, to carry out the intent of this paragraph 1.2.

1.3   ASSIGNOR agrees to deliver to ET all books of account and records, to execute and deliver all additional necessary documents immediately upon request by ET, and to endorse all indicia of ownership where required by ET, in order to complete the



transfer of all assets to ET as intended by this General Assignment including without limitation, all of ASSIGNOR'S real and personal property and/or ASSIGNOR'S interest therein, including mortgages, deeds of trust, motor vehicles, patent and copyrights, and general intangibles. ET is hereby authorized to execute all endorsements and demands requiring ASSIGNOR'S signature, in the name of ASSIGNOR. ASSIGNOR further authorizes ET to apply for any deposits, refunds (including specifically, among all others, claims for refund of taxes paid) or claims wherever necessary, in the name of ASSIGNOR. ET is authorized to direct all ASSIGNOR'S United States mail to be delivered to ET, and ET is expressly authorized and directed to open said mail as agent of ASSIGNOR. ASSIGNOR authorizes ET to do any thing or act which ET in its sole and absolute discretion deems necessary or advisable to effectuate the purposes of this General Assignment.

1.4 ASSIGNOR and ET agree to the following:

1.4.1 This instrument transfers legal title and possession to ET of all the Assigned Property and, ET, in its own discretion, may determine whether to continue all, or part, of ASSIGNOR'S business operations, or to liquidate said assets; if ET deems it advisable it may operate the business, except that it is the intent of the parties that such operation shall be limited in duration and shall be for the purpose of maximizing the value of the Assigned Property.

1.4.2 ET, at its sole discretion, may sell and/or dispose of ASSIGNOR'S assets upon such terms and conditions as it may deem fit, at public or private sale, provided, however, that ET shall use its best efforts to maximize the proceeds from the sale and disposition of said assets; ET shall not be liable in any manner, and ET's obligations shall be in its representative capacity, only, as an ASSIGNEE for the general benefit of ASSIGNOR'S creditors. ET shall administer the estate created hereby to the best of its ability and it is expressly understood that it, its agents, servants or employees shall be liable only for failure to exercise reasonable care and diligence in discharging its duties hereunder, and it shall not be liable for any act or thing done by it, its agents, servants, or employees in good faith and/or in reliance on advice of counsel in connection herewith.

1.4.3 ASSIGNOR shall be fully and solely responsible for the preparation and filing of all income tax returns, including without limitation the payment for the preparation of such returns and the payment of any taxes reported as due and payable in such returns. As a condition to the effectiveness of this Agreement, ASSIGNOR has, concurrently with the execution hereof, provided to ET copies of all state and federal payroll and/or sales tax returns through and including the fourth quarter of 2018 and (a) closing return(s) for the short period of the fourth quarter of 2018. ASSIGNOR has provided ET proof of payment of all payroll and/or sales taxes or delivered cash to ET, concurrently with the execution hereof, sufficient to pay in full all payroll and/or sales



taxes reported on such tax returns together with any and all interest and penalties accruing thereon.

### 1.5 Excluded Matters

**1.5.1** Leases and leasehold interests in real or personal property are not included in this Assignment. If, however, ET determines any lease or leasehold interest may be assigned, and also that the same has realizable value for ASSIGNOR'S creditors, then ASSIGNOR agrees that upon demand of ET, it will assign and transfer such lease or leasehold interest to ET, or its nominee, for administration under the terms of this Assignment.

**1.5.2** Employee benefit plans (which includes any related employee trust fund) including without limitation, any ERISA-qualified plan or other similar employee plan created and/or maintained by ASSIGNOR are not property of ASSIGNOR and are not included in this Assignment. ET shall not, as a result of this Agreement, be, nor be deemed to be, an administrator under such employee benefit plan, nor shall ET have any role in, or responsibility for, the termination of any such employee benefit plan of ASSIGNOR and/or its employees.

**1.5.3** In the event ASSIGNOR is engaged in the sale of alcoholic beverages, ASSIGNOR hereby appoints ET as its agent for the sole purpose of filing such documents as are necessary and/or appropriate to the completion of any sale of permit(s) for the sale of alcoholic beverages in the ASSIGNOR'S place of business and/or sale of alcoholic beverage license(s) ("Sale"). ET is hereby vested with absolute discretion in regard to any transfer or sale of ASSIGNOR'S permit(s) for the sale of alcoholic beverages in the ASSIGNOR'S place of business and/or sale of alcoholic beverage license(s) and ET assumes no liability by reason thereof. ASSIGNOR hereby assigns to ET all of the proceeds of the Sale for the benefit of ASSIGNOR'S creditors, generally in accordance with the terms of this agreement.

## 2.
## POWERS OF THE ASSIGNEE

Except as otherwise allowed or limited by statutes, ET shall have the following powers:

**2.1** ET may sell, lease or use the property of ASSIGNOR whichever ET determines to be in the best interest of all parties. Subject to all valid secured claims, from all funds received from gross proceeds of sales, collections of all sums due, operation of ASSIGNOR'S business, and all other sources (hereinafter "Gross Proceeds"), ET shall pay itself a reasonable fee of $65,000 for services it provides as ASSIGNEE, excluding any costs



for booking and other administrative matters, pursuant to the terms hereof on and after the effective date hereof. "Gross Proceeds" are defined as all proceeds realized on the account of disposition of assets whether or not such proceeds are received or handled by ET.

2.2  ET may in its sole and absolute discretion also pay from the Proceeds:

2.2.1  Its actual out-of-pocket expenses including without limitation, photocopy, postage, messenger, overnight mail, mileage, parking and records storage.

2.2.2  Remuneration for fees and expenses incurred before or after the date of this agreement, payable at ET's sole discretion, to professionals, para-professionals and agents including without limitation, bookkeepers, consultants, employees and reasonable fees and expenses to accountants, attorneys other professionals employed by ET or ASSIGNOR. ET may employ persons as ET determines are necessary to perform its duties hereunder in its sole discretion and judgment.

2.2.3  The costs and expenses incurred by any creditor who may have levied an attachment or other lien on assets of ASSIGNOR.

2.2.4  Any and all fees, expenses and/ or charges incurred in the defense of an involuntary bankruptcy petition, including, without limitation, a motion for abstention by ET.

2.2.5  All of the aforementioned amounts are to be determined at ET's sole discretion and judgment.

2.3  ET may compromise claims, complete or reject ASSIGNOR'S executory contracts, discharge at its option any liens on said assets and any indebtedness which under law is entitled to priority of payment. ET shall have the power to borrow money, hypothecate and pledge as security for repayment of a debt the assets, and to do all matters and things which said ASSIGNOR could have done prior to this General Assignment. Any act or thing done by ET hereunder shall bind the assignment estate and ET only in its capacity as ASSIGNEE for the benefit of ASSIGNOR'S creditors. ET shall have the right to sue as the successor of the ASSIGNOR, or ET is hereby given the right and power to institute and prosecute legal proceedings in the name of the ASSIGNOR, the same as if the ASSIGNOR had itself instituted and prosecuted such proceedings or actions. ET is hereby authorized and has the right in its sole discretion to defend all actions instituted against the ASSIGNOR, and to appear on behalf of the ASSIGNOR in all proceedings (legal or otherwise) in which ASSIGNOR is a party. /ASSIGNOR does hereby appoint ET as the ASSIGNOR'S attorney in fact with full power to act for and in place of the ASSIGNOR in



such actions or proceedings or in any other matters, including the right to verify all pleadings or other documents on behalf of ASSIGNOR.

2.4  ET shall not be personally liable in any manner in connection with the performance of its duties and obligations hereunder. ET's obligations hereunder shall be in a representative capacity only as an ASSIGNEE for the general benefit of ASSIGNOR'S creditors. ET shall administer this estate to the best of its ability and it is expressly understood that ET, and its agents, servants or employees, shall be liable only for reasonable care and diligence in the administration of the Assignment Estate. ET shall not be liable for any act or thing done by ET, its agents, servants, or employees in good faith in connection herewith. ET is not liable or responsible for any obligations of any nature whatsoever incurred at any time by ASSIGNOR, whether before or after the date of this Assignment.

2.5  ET agrees, unless otherwise provided at law, to make any and all claims for refund of taxes which may be due from the Director of Internal Revenue and/or the State Taxing Authorities for tax refunds, or otherwise. In the event any such refunds are received by ASSIGNOR, ASSIGNOR agrees to pay them over to ET, and hereby empowers ET, as attorney in fact of ASSIGNOR, to make all claims for refunds which may be made by an attorney-in-fact. ASSIGNOR further agrees, to the extent that any tax or the refund claim is not assignable, to make any and all claims for refund of taxes or any other money due, from any governmental agency, for tax refunds, or otherwise, and to forthwith upon receipt of any such funds, pay them over to ET, and hereby empowers ET, his attorney-in-fact of ASSIGNOR, to make all claims for refunds which may be made by an attorney-in-fact.

2.6  ET shall have all powers, pursuant to the laws of the State of California or any other applicable law to recover preferential transfers and fraudulent conveyances and may sell and/or transfer such powers to a third party.

### 3.
### ALLOWANCE AND PAYMENT OF CLAIMS

3.1  Except as otherwise provided herein, allowance of claims shall be determined by the standards set forth in *11 U.S.C. §§ 501 and 502*. ET shall have no obligation to make disbursement of funds to claimants unless the funds realized through the liquidation, net of all administrative expenses, the claims of secured creditors, and the claims of taxing authorities, are in excess of $3500. In the event that the funds realized through the liquidation, after payment of all administrative expenses, the claims of secured creditors, and the claims of taxing authorities is not greater than $3500, such funds shall be payable to ET. Additionally, any Unclaimed Funds, as defined by paragraph 3.7, shall be additional compensation to ET.



    **3.2**    June 2, 2019, shall be the last day to submit claims. Written notice of said last day to submit claims shall be given by first class mail, postage fully pre-paid, to all creditors. A claim shall be deemed submitted if the creditor making such claim completes, signs and submits to ASSIGNEE the Proof of Claim form, without alteration, provided to them by ASSIGNEE. By submitting a claim, each creditor shall waive and forever release and discharge all claims it has or may have against the property transferred by this agreement or against ASSIGNOR, its officers, directors, shareholders and attorneys. The release and discharge provided in this paragraph is in consideration of and in exchange for the release by officers, directors, and shareholders of any and all unsecured claims they have or may in the future have against ASSIGNOR including without limitation, claims for indemnity and/or contribution under applicable law. The consideration for the release herein is the acknowledgment by the shareholders of ASSIGNOR that ASSIGNEE shall disallow any unsecured claims held by such shareholders whether on account of monies owed them on the date of this assignment or on account of subrogation, indemnity or any other basis. All claims not received by ET by the last day to submit claims may, in ET's sole and absolute discretion, be disregarded for purposes of distribution of assets as required hereunder.

    **3.3**    ASSIGNEE shall, if a purpose would be served, determine whether any claim shall be allowed for payment hereunder pursuant to paragraph 3.1. hereof. If ET determines that a claim should not be allowed in whole or partially for distribution ("Rejected Claim"), ET shall give written notice by first class mail, postage prepaid, addressed to the holder of such claim ("Notice") at least 20 days prior to making any distribution to any claims having the same or lower priority as determined by paragraph 3.6 and its sub-parts hereof. In the event that a creditor who holds a claim which is a Rejected Claim disputes ET's rejection of such claim, such creditor must, within twenty (20) days from the date of the Notice, commence an action for declaratory relief only in the California Superior Court, Los Angeles County, Long Beach Division, to establish such claim. Failure to timely file and prevail in a lawsuit to establish the Rejected Claim will result in its allowance or disallowance, as provided in the Notice, for purposes of distributions of funds pursuant to the terms hereof.

    **3.4**    With respect to any claim that is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim shall be limited to:

        **3.4.1**    The rent reserved by such lease, without acceleration, for the greater of one year, or 15%, not to exceed three years, of the remaining term of such lease, following the earlier of:

            **3.4.1.1**    The date of this Agreement; and



    3.4.1.2 The date on which such lessor repossessed, or the lease surrendered, the leased property; plus

   3.4.2 Any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

  3.5 A claim based upon an employment contract shall be allowed only to the extent that it does not exceed (a) one year's compensation under the contract measured from the earlier of the assignment date or the date that either the employee or employer terminated the contract; plus (b) unpaid compensation due under the contract on the earlier of such dates.

  3.6 After payment of all valid claims of secured creditors and the items set forth in paragraph 2.1 and 2.2 and its sub-parts, claims shall be paid in the following order of priority:

   3.6.1 First, FEDERAL taxes of any nature whatsoever owing as of the date of this Assignment, or such claim of any Federal governmental agency as defined under *31 U.S.C. § 3713*, including, without limitation, Federal withholding taxes, Federal unemployment taxes and any other Federal income, excise, property and employment tax.

   3.6.2 Second, to claims for wages and employment benefits to the extent provided by *11 U.S.C. §507(a)(4)*.

   3.6.3 Third, up to $900 per individual for deposits for purchase, lease, or rental of real property or for the purchase goods or services for personal, household and/or family use that were not delivered or provided.

   3.6.4 Fourth, to all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including, without limitation, implement, property and income taxes.

   3.6.5 Fifth, with the exception of those classes set forth above, all distributions to other creditors shall be, within each class, pro-rata in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full. ET may, but is not required to, make interim distributions whenever ET has cumulative sufficient funds to enable it to make a reasonable distribution.

   3.6.6 Sixth, the surplus of monies and property, if any, to be transferred and conveyed to ASSIGNOR.



3.6.7 If any undistributed dividends to creditors or any reserve of other funds shall remain unclaimed for a period of ninety (90) days after issuance of distribution checks by ET ("Unclaimed Funds"), then the same shall become the property of ET and used to supplement its fees for services rendered for administering this Assignment.

3.7 ET shall make distributions, as referenced in paragraph 3.5 above, as often as is reasonable and practical, as determined in ET's sole and absolute discretion; provided, however, that such distributions shall be made no more often than every 90 days.

3.8 All distributions made by ET shall have appearing on them the following legend:"Acceptance of this check by endorsement or other form of negotiation constitutes an absolute waiver of any right to contest the release stated to be in effect upon the filing of a claim pursuant to paragraph 3.2 of the General Assignment Agreement. THIS CHECK IS VOID IF NOT CASHED WITHIN 90 DAYS". Any check voided pursuant to this paragraph 3.7 shall be Unclaimed Funds.

3.9 In the event that ET contest the validity of a Claim[1] (as set forth more fully in detail in paragraph 3.3 above) falling within any of the classifications set forth in paragraph 3.5 and its subparts hereinabove, ET may withhold the pro-rata distribution (whether interim or final) to which the holder of such contested Claim would otherwise be entitled to receive until the allowance of the contested claim is determined by a Court of competent jurisdiction or by agreement with ET, provided, however, such court determination is timely sought by the holder of the contested Claim.

## 4.
## OTHER PROVISIONS

4.1 It is agreed and understood that this transaction is a general assignment for the benefit of all of ASSIGNOR'S creditors; and that this is a "general assignment for the benefit of creditors," as set forth in and defined by the *California Code of Civil Procedure § 493.010*, and all other laws of the State of California pertaining thereto. This Agreement shall be construed in accordance with, and be governed by, the internal laws of the State of California, which shall have exclusive jurisdiction of any and all disputes hereunder.

4.2 ASSIGNOR acknowledges and affirms it is required, pursuant to *California Code of Civil Procedure Section 1802(c)*, to provide ET concurrently herewith a verified list of ALL creditors (including, without limitation, disputed creditors and persons and/or entities having lawsuits against ASSIGNOR), equity holders, and any other parties in interest, which shall include the name(s), address(es), city(s), state(s), and ZIP Code(s) for

---

[1] The term "Claim" for purposes of this agreement shall mean a right to payment as defined by 11 U.S.C. §101(5) and the Federal case law construing it.



each creditor together with an amount of the creditor's anticipated claim in the General Assignment proceedings ("Verified List"). The Verified List shall be signed under penalty of perjury by the ASSIGNOR'S representative. ASSIGNOR and ET agree that ASSIGNOR is better informed of identity of the nature and extent of its creditors (including, without limitation, disputed creditors and persons and/or entities having lawsuits against ASSIGNOR), equity holders, and any other parties in interest as of the moment this General Assignment became effective than is ET. Therefore, ASSIGNOR acknowledges and agrees not withstanding any other information imparted to ET at any time prior to the effective date of this General Assignment, ET will exclusively rely on the Verified List and no other information in giving notice of this General Assignment to ASSIGNOR'S creditors (including, without limitation, disputed creditors and persons and/or entities having lawsuits against ASSIGNOR), equity holders, and any other parties in interest.

4.3     ASSIGNOR understands and agrees that it shall provide ET at the time of making of this Assignment a list of unpaid accounts receivable and or amounts due to ASSIGNOR, if any, which shall include the name(s), addresses, city(s), state(s), ZIP Code(s), and the amount owing for each debtor or account debtor of ASSIGNOR. Additionally, ASSIGNOR shall deliver to ET, at or before the execution of this General Assignment, any and all documentation supporting each account receivable or amount due to ASSIGNOR.

4.4     ASSIGNOR acknowledges and agrees it has solely relied upon the advice of its own legal counsel, or has had an opportunity to do so, prior to and when making the decision to enter into its General Assignment by executing this contract. ASSIGNOR further acknowledges and agrees it has not directly or indirectly received advice or counsel from ET prior to and when making the decision to enter into this General Assignment. ASSIGNOR further acknowledges and agrees at all times prior to executing this General Assignment, it knew and understood ET did and does not engage in providing legal services or legal advice and provided neither to ASSIGNOR.

4.5     Except as otherwise provided herein, this Agreement shall be construed in accordance with and governed by the laws of the State of California.

4.6     Venue and jurisdiction of any legal action to enforce the terms of this Agreement or to enforce the powers granted to ET by this Agreement or at law, including, without limitation, the powers granted by paragraph 2.1, 2.2, 2.3, 2.4, 2.5 and 2.6 and the *California Code of Civil Procedure Section 1800*, by this Agreement may be exclusively in the Superior Court of California, County of Los Angeles, State of California. By submitting to ET a proof of claim pursuant to paragraph 3.2 of this Agreement, the claimant submitting such claim consents to be bound by the terms of this paragraph 4.6.



4.7  In the event that any court holds any provision, term, covenant, or condition of this Agreement to be invalid, then any such invalidity shall not effect any other term, covenant, or condition and the remaining provisions of this Agreement shall be given full force and effect pursuant to the laws of the State of California, unless such invalid term, covenant, or condition is a material part of this Agreement.

4.8  In the event that ET should elect to defend any challenge by any creditor of all or any portion of this Agreement, including the defense of a rejection or partial allowance of a claim pursuant to paragraph 3.3 hereof, ET shall be entitled to reasonable attorneys' fees and costs from such creditor.

4.9  This assignment supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

4.10  Any party, whether ASSIGNOR a creditor or other party, ("Requesting Party") requesting access to information held or maintained by ASSIGNEE, shall not be entitled to such information until the 121st day after the effective date hereof and then only on the condition that Requesting Party pay to ASSIGNEE the actual expenses incurred by the Assignment Estate for providing such information or providing access to such information.

This GENERAL ASSIGNMENT is made this 24th day of DECEMBER, 2018 at Los Angeles, CALIFORNIA.

ASSIGNOR:

SAAVY NATURALS, INC.

By: _____
Hugo Saavedra

CA DL # A4296230 exp 10/8/2022

Notarized: 12/23/2018
Vandria Berry
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF991772
Expires 5/11/2020

The foregoing GENERAL ASSIGNMENT is hereby accepted this 24th day of December, 2018 at Los Angeles, California.

ASSIGNEE:
EQUITABLE TRANSITIONS, INC.

By: _____
Nigel Hamer, President

Page 10 of 10

| EQUITABLE TRANSITIONS, INC.<br>444 West Ocean Boulevard, Suite 1400<br>Long Beach, California 90802 | **PROOF OF CLAIM** |
|---|---|
| **Assignor (Debtor): SAAVY NATURALS, INC.** | Check this box to indicate that this claim amends a previously filed claim |
| Creditor's Name and Address (See Instructions on Reverse Side): | Filed on _____ |
|  | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars |
| Name and address where Notices should be sent (if different from above): | Check this box if you are the debtor or trustee in this case. |

1. Amount of Claim as of the Date of the General Assignment: $_____

If all or part of your claim is secured, complete item 4 below; however, if your entire claim is unsecured, do not complete item 4

If all or part of your claim is entitled to priority, complete item 5.

Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim. _____

(See Instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies Assignor: _____

3a. (See Instructions of Reverse Side): _____

4. Secured Claim (See Instruction #4 on reversed side.)

Check the appropriate box if your claim is secured by a lien on property or a right of set off and provide the requested information

Nature of property or right of setoff    ☐ Real Estate ___ ☐ Motor Vehicl    Other

Value of Property $_____ Annual Interest Rate _____ %

Amount of arrearage and other charges as of time of General Assignment included in secured claim,

if any: $_____    Basis for Perfection: _____

Amount of Secured Claim: $_____   Amount of Unsecured Claim: $_____

6. Credits The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See Instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING
If the documents are not available, please explain

8. The undersigned has received and read the General Assignment and hereby agrees to be bound by all of its terms

Date   Signature  The person submitting this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to submit this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any

5  Amount of Claim Entitled to Priority. If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim

Wages, salaries, or commissions (up to $4,300) earned within 90 days before the General Assignment Calif Code of Civ Pro § 1204

Contributions to an employee benefit plan Calif Code of Civ Proc § 1204

Up to $900.00 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use Calif Code of Civ Proc § 1204

Taxes or penalties owed to governmental units

Other --

Amount entitled to priority:

$_____

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law.*

## Items to Be Completed Proof of Claim Form

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the General Assignment. Please include any phone number, facsimile number, and/or email address for the primary contact. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the Equitable Transitions, Inc., informed of its current address.

1. **Amount of claim as of Date of the General Assignment**
State the total amount owed to the creditor on the date of the General Assignment. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2. **Basis for Claim.**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services, so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if requested by Equitable Transitions, Inc.

3. **Last Four digits of Any number by Which Creditor Identifies Assignor**
State only the last four digits of the Assignor's account or other number used by the creditor to identify the Assignor.

   3a. Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the Assignor.

4. **Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claims as of the date of the General Assignment.

5. **Amount of Claim Entitled to Priority**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

6. **Credits:**
An authorized signature on this proof of claim serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the Assignor credit for any payments received toward the debt.

7. **Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature**
The person submitting this proof of claim must sign and date it. Print the name and title, if any, of the creditor or other person authorized to submit this claim. State the filer's address and telephone number. Attach a complete copy of any power of attorney.

## DEFINITIONS

**Assignor**
An Assignor is the person, corporation, or other entity that made the General Assignment.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the Assignor that arose on or before the date of the General Assignment. A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the Assignor on the date of the General Assignment. The creditor must submit the form to Equitable Transitions, Inc.

**Secured Claim**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be involuntarily granted by an Assignor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the Assignor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a General Assignment before other unsecured claims.

**Redacted**
A document has been redacted when the person submitting it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social security, individual's tax-identification, or financial account number, all but the initials of a minor's name and only the year of any personal's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgement of Submission of Claim**
To receive acknowledgement of your submission, you must enclose a stamped, self-addressed envelope and a copy of this proof of claim.