**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  1:19-cv-25019-SINGHAL/McAliley**

INFINITY GLOBAL CONSULTING
GROUP INC., et al.,

        Plaintiffs,

v.

TILRAY, INC., et al.,

        Defendants.

_____/

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW

Defendants Tilray, Inc. ("Tilray"), Privateer Holdings, Inc. ("Privateer Holdings"), Privateer Evolution, LLC ("Privateer Evolution"), Left Coast Ventures, Inc ("Left Coast"), Eko Holdings, LLC ("Eko"), and Brett Cummings ("Cummings") (collectively, "Defendants"),[1] under Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1404(a), submit this motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer this action. In support of the motion, Defendants state:

### I.   INTRODUCTION

Plaintiffs Infinity Global Consulting Group, Inc., Joseph M. Vazquez III, as an individual, and Joseph M. Vazquez III, derivatively as a shareholder on behalf of Trimax Corporation (collectively, "Plaintiffs") try to hale Defendants into court in Florida. However, Defendants have no connection to Florida and do not reside in Florida, and no relevant conduct occurred in or was directed at Florida. This case simply does not belong in a Florida court. The Court should dismiss this action under Fed. R. Civ. P. 12(b)(2) or, in the alternative, transfer this action under 28 U.S.C. § 1404(a) to the Central District of California for the following reasons:

*First*, the Court should dismiss the action because it lacks personal jurisdiction over Defendants. No Defendant is incorporated or headquartered in Florida, has any presence in the state, or can otherwise be considered "at home" or domiciled in Florida. Controlling law holds Defendants are not subject to general jurisdiction here. The Court also lacks specific jurisdiction because Plaintiffs' claims do not arise out of any relevant conduct by Defendants that occurred in or was directed at Florida. Rather, all of the relevant conduct alleged by Plaintiffs occurred in and

---

[1] Defendants Hugo Saavedra, Debra Saavedra, and Equitable Transitions, Inc. have not yet appeared in this matter and do not join in this Motion. References to "Defendants" do not include the Saavedras or Equitable Transitions.

involves California, concerns California companies and individuals and transactions, and involves contracts executed and performed in California that are governed by California law.  Plaintiffs themselves admitted and affirmatively alleged all this when they asked Defendants in November 2019 to accept service of Plaintiffs' original *California* complaint—before Plaintiffs decided to forum shop by filing this action in Florida.

*Second*, even if the Court finds it could exercise personal jurisdiction over Defendants, it should still transfer this action to the Central District of California under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses."  No key witnesses reside in the Southern District of Florida; rather, they all reside in California.  Indeed, nearly all the relevant discovery will occur in California—where the vast majority of witnesses and documents are located, where the relevant acts at issue occurred, and where the relevant contracts were executed and performed.

The Court should dismiss Plaintiffs' claims against Defendants for lack of personal jurisdiction or, alternatively, transfer this action to the Central District of California.

## II.   BACKGROUND FACTS

### A.   Defendants Have No Connection to Florida.

Plaintiffs' Amended Complaint names as Defendants Tilray, Privateer Holdings, Privateer Evolution, Left Coast, Eko, and Cummings, as well as non-movants Hugo Saavedra, Debra Saavedra, and Equitable Transitions Inc. ("Equitable Transitions").  None of the Defendants are incorporated or headquartered or domiciled in Florida, and none have any presence here.

Tilray is a Delaware corporation with its principal place of business in Nanaimo, British Columbia, Canada.  Declaration of Dara Redler ("Redler Decl.") ¶ 1.  Tilray has no presence in Florida.  *Id.* ¶¶ 2-5.  It does not maintain any offices in Florida or have any employees in Florida.  *Id.*  It does not do business in Florida, is not licensed or registered to do business in Florida, and does not have a registered agent in the state.  *Id.*

Before merging with Tilray in December 2019, Privateer Holdings was a Delaware corporation with its principal place of business in Seattle, Washington.  Declaration of Patrick Moen ("Moen Decl.") ¶ 1.  During the relevant time, Privateer Holdings had no presence in Florida.  *Id.* ¶¶ 3-6.  It did not maintain offices or have any employees in Florida.  *Id.*  Privateer Holdings did not do business in Florida, was not licensed or registered to do business in Florida, and did not have a registered agent in the state.  *Id.*

In December 2019, Tilray and Privateer Holdings merged, with Privateer Evolution, LLC ("Privateer Evolution") emerging as the successor to Privateer Holdings.  Redler Decl. ¶ 7.  Privateer Evolution is a wholly owned subsidiary of Tilray.  *Id.*  It is a Delaware limited liability company with its principal place of business in Seattle, Washington.  *Id.* ¶ 8.  Privateer Evolution has no presence in Florida.  *Id.* ¶¶ 9-13.  It does not maintain any offices or have any employees in Florida.  *Id.*  It does not do business in Florida, is not licensed or registered to do business in Florida, and does not have a registered agent in the state.  *Id.*

Left Coast is a Delaware corporation with its principal place of business in California.  Declaration of Brett Cummings ("Cummings Decl.") ¶¶ 19, 23.  Left Coast has no presence in Florida.  *Id.* ¶¶ 19-34.  It does not maintain any offices or have any employees in Florida.  *Id.* ¶¶ 25-26.  It does not do business in Florida, is not licensed or registered to do business in Florida, and does not have a registered agent in the state.  *Id.* ¶¶ 26, 30.

Eko is a California limited liability company with its principal place of business in California.  *Id.* ¶¶ 37, 40.  Eko has no presence in Florida.  *Id.* ¶¶ 37-51.  It does not maintain any offices or have any employees in Florida.  *Id.* ¶¶ 42-43.  Eko does not do business in Florida and is not licensed or registered to do business in Florida, and does not have a registered agent in the state.  *Id.* ¶¶ 43, 47.

Cummings is a California resident who has never lived in Florida. *Id.* ¶ 4. Cummings has never owned property in Florida, maintained an office in Florida, or otherwise personally conducted business in Florida. *Id.* ¶¶ 4-16.

Both Hugo and Debra Saavedra are California residents and conduct their business in Los Angeles, California. Am. Compl. ¶¶ 31-32.

Equitable Transitions is a California Corporation with its primary place of business in Los Angeles County, California. *Id.* ¶ 33.

### B. Plaintiffs Do Not Allege Conduct by Defendants In or Directed at Florida.

The Amended Complaint alleges claims arising from an alleged scheme to purchase the assets of Trimax Corporation. Am. Compl. ¶ 1. Plaintiffs allege that, before the transactions at issue, Trimax owned, through its subsidiary Saavy Naturals Inc. ("Saavy"), the business assets of the Saavy, including its line of soaps, body creams, body scrubs, and other products. *Id.* ¶ 3. Trimax and Saavy are or were Nevada corporations. *Id.* Hugo Saavedra was the sole director of Trimax, and he and Debra Saavedra were the only senior executives of both Trimax and Saavy, and operated the entities out of Chatsworth, California. *Id.* ¶ 4; *see id.* Exs. D (Dkt. 58-4), H (Dkt. 58-8), I (Dkt. 58-9), K (Dkt. 58-11) (listing Chatworth, California, address for Trimax and Saavy).

According to the Amended Complaint, in August 2018, Cummings entered into discussions with the Saavedras about the acquisition of an ownership stake in Saavy. Am. Compl. ¶ 6. Plaintiffs allege that Cummings represented himself to be CEO of Privateer Holdings and Left Coast, *id.*, although the related communication attached to the Amended Complaint makes no such representation with respect to Privateer Holdings. *Id.* ¶¶ 6, 7 & Ex. B (Dkt. 58-2). Plaintiffs allege that the original investment plan was abandoned, and, in December 2018, Cummings and the Saavedras orchestrated a "loan to own" plan whereby Saavy transferred its assets to Defendant Eko (which Plaintiffs incorrectly allege is a subsidiary of Left Coast). *Id.* ¶¶ 16-17. Plaintiffs

claim that Eko made a loan to Saavy and, shortly thereafter, Saavy, pursuant to California state law, made a general assignment for the benefit of creditors to Equitable Transitions as assignee. *Id.* ¶ 50; Ex. L (Dkt. 58-12).  According to Plaintiffs, Eko then purchased all of Saavy's assets for forgiveness of $41,000 of the debt Saavy owed to Eko plus $70,000 in cash.  *Id.*  Plaintiffs allege that this left debts owed to Trimax creditors (like Plaintiff Infinity Consulting) unpaid and reduced the value of shares held by Trimax shareholders (like Plaintiff Vazquez).  *Id.* ¶¶ 1, 24, 40-41.

Based on these allegations, Plaintiffs assert claims against Defendants for fraudulent conveyance, conversion, intentional interference with contractual relations, negligent interference with prospective economic relations, and aiding and abetting.  *Id.* ¶¶ 83-98, 109-132.  Plaintiffs also assert alter ego claims against Privateer Evolution and Tilray, contending that, as a result of the merger, they are liable for the alleged conduct of Privateer Holdings.  *Id.* ¶¶ 61-69.

Plaintiffs generically allege that each of the Defendants "committed tortious acts and caused the breach of a contract in Florida causing injury to Plaintiffs who were … residents of Miami-Dade County, Florida."  *See id.* ¶¶ 25-35.[2]  But the Amended Complaint does not allege any specific acts taken by any Defendant in Florida or even directed at Florida.  *See* Am. Compl. For example, Plaintiffs do not allege that Cummings or any representative of Privateer Holdings, Left Coast, or Eko ever traveled to Florida as part of the alleged plan.  *See id.*  Nor do Plaintiffs allege that Cummings or any representative of Privateer Holdings, Left Coast, or Eko ever communicated with anyone in Florida as part of the "scheme" alleged in the Amended Complaint. *Id.*  Plaintiffs do not allege that the transactions underlying their claims were executed in Florida, performed in Florida, or have anything to do with Florida.  *See id.*

---

[2] Plaintiffs also allege that Tilray "caused the sale of products which were used or consumed in Florida."  *Id.* ¶ 34.  But Plaintiffs do not allege that its claims against Tilray arise from any supposed sales of products.  *See id.*

In fact, the transactions that are the subject of Plaintiffs' claims all occurred in California, involving companies and individuals based or residing in California. The agreements underlying the alleged "loan to own" plan between Eko and Saavy were executed and performed in California and are governed by California law. Am. Compl., Ex. K (Dkt. 58-11). Similarly, Saavy's assignment for the benefit of creditors to Equitable Transitions was executed and performed in California and is governed by California law. *Id.* Ex. L (Dkt. 58-12).

### III.   ARGUMENT AND AUTHORITY

#### A.  The Court Should Dismiss the Claims Against Defendants for Lack of Personal Jurisdiction.

This Court lacks general or specific jurisdiction over Defendants, so the claims against Defendants must be dismissed. "A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citation omitted), *cert. denied sub nom.*, 139 S. Ct. 1384 (2019). "First, the exercise of jurisdiction must be appropriate under the forum state's long-arm statute, which delimits the exercise of personal jurisdiction under state law." *Id.*  "Second, the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment." *Id.* Florida's long-arm statute provides two ways in which a defendant may be subject to jurisdiction in Florida: (1) specific jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida; and (2) general jurisdiction over any claims against a defendant, whether or not the claims involve the defendant's activities in Florida—if a defendant engages in substantial and not isolated activity in Florida. *Id.*; *see also* Fla. Stat. § 48.193. "Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process." *Id.*

A court must dismiss a claim under Rule 12(b)(2) if it lacks general jurisdiction over the defendant or specific jurisdiction with respect to the claim. *Bristol-Myers Squibb Co. v. Super.*

*Court*, 137 S. Ct. 1773, 1779 (2017); *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Plaintiffs bear the burden of making a prima facie showing that personal jurisdiction exists.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted).  Here, Plaintiffs have not established—and cannot establish—that Defendants are subject to either general or specific personal jurisdiction in Florida.  The Court should therefore dismiss the claims against Defendants for lack of personal jurisdiction.

      **1.**        **The Court Lacks General Personal Jurisdiction over Defendants.**

            **a.**  **The Corporate Defendants are Not Subject to General Jurisdiction in Florida.**

This Court lacks general personal jurisdiction over the corporate Defendants because they are not "at home" in Florida.  A court with general jurisdiction over a defendant "may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis in original).  Consequently, a court may assert general jurisdiction only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[3]  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919); *see Waite*, 901 F.3d at 1317 (quoting same).  But "'only a limited set of affiliations with a forum' will render a defendant at home there."  *Waite*, 901 F.3d at 1317 (quoting *Daimler*, 571 U.S. at 137).

"The 'paradigm all-purpose forums' in which a corporation is at home are the corporation's place of incorporation and its principal place of business."  *Id.* (quoting *Daimler*, 571 U.S. at 137).  "Outside of these two exemplars, a defendant's operations will 'be so substantial and of such a nature as to render the corporation at home in that State' only in an 'exceptional case.'"  *Id.*

---

[3] "Because Florida's long-arm provision extends to the limits on personal jurisdiction imposed by the Due Process Clause," the jurisdiction analysis is coextensive with the due process inquiry. *Waite*, 901 F.3d at 1316 (citation and quotation omitted).

(quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)); *see also Daimler*, 571 U.S. at 139 n.19.   Applying this precedent, the Eleventh Circuit has recognized that "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015); *see also Waite*, 901 F.3d at 1318 (examining whether defendant's leadership was based in the forum or the company otherwise directed its operations from the forum); *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1318 (S.D. Fla. 2018) (Ungaro, J.) (finding no general jurisdiction over Chase Bank, even though it regularly conducts business in this District, because Chase Bank was not "essentially at home" in Florida).

In *Goodyear*, the Supreme Court rejected a "sprawling view of general jurisdiction," in which "any substantial manufacturer … would be amenable to suit, on any claim for relief, wherever its products are distributed." *Goodyear,* 564 U.S. at 929 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)).   In *Daimler*, the Supreme Court went further, and recognized that general jurisdiction does not exist simply because a corporation "engages in a substantial, continuous, and systematic course of business" in a state.   571 U.S. at 138-39.   The inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render it ***essentially at home*** in the forum State.'"   *Id.*   (quoting *Goodyear*, 564 U.S. at 919) (emphasis added); *see also Waite*, 901 F.3d at 1317 (quoting same).

The Court has no basis to exercise general jurisdiction here.   No Defendant is incorporated in or has its principal place of business in Florida.   Tilray is a Delaware corporation with its principal place of business in Nanaimo, British Columbia, Canada.   Redler Decl. ¶ 1.   Before

8

merging with Tilray in December 2019, Privateer Holdings was a Delaware corporation headquartered in Seattle, Washington.  Moen Decl. ¶ 1.  Privateer Evolution is a Delaware limited liability company[4] with its principal place of business in Seattle, Washington.  Redler Decl. ¶¶ 7-8.  Left Coast is a Delaware corporation with its principal place of business in California.  Cummings Decl. ¶¶ 19, 23.  Eko is a California limited liability company with its principal place of business in California.  *Id.* ¶¶ 37, 40.  As such, Florida is not the paradigm forum for general jurisdiction for any of the corporate Defendants.

Further, this is not the "exceptional case" in which a defendant may be subject to general jurisdiction due to extensive contacts that "closely approximate" its contacts with its home state.  *Carmouche*, 789 F.3d at 1205.  None of the entities have offices, employees, or leadership in Florida, and none direct their operations from Florida.  Moen Decl. ¶¶ 2-6; Redler Decl. ¶¶ 2-5, 9-13; Cummings Decl. ¶¶ 24-34, 41-51.  The Defendants have no meaningful contacts with Florida whatsoever, let alone the kinds of contacts that would render them essentially "at home" in Florida.  Because Tilray, Privateer Holdings, Privateer Evolution, Left Coast, and Eko are not at home in Florida, this Court lacks general jurisdiction over those entities.  *Daimler*, 571 U.S. at 137-39; *Goodyear*, 564 U.S. at 924-29.

### b.  Brett Cummings is Not Subject to General Jurisdiction in Florida.

The Court also lacks general jurisdiction over Cummings.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"  *Daimler*, 571 U.S. at 137 (citation omitted).  "Beyond [domicile in the forum], the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the

---

[4] The same test applies to both corporations and limited liability companies.  *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1344 (S.D. Fla. 2017).

forum when served with process." *McCullough*, 268 F. Supp. 3d at 1350 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)). "Federal courts throughout the United States have held … that general jurisdiction over any individual comports with due process only in these three scenarios." *Id.* (collecting cases).

Here, Cummings is domiciled in California, not Florida. Cummings Decl. ¶ 4. He was not served in Florida and has not consented to jurisdiction in Florida. *Id.* ¶ 66. Accordingly, the Court lacks general jurisdiction over Cummings.

## 2.     The Court Lacks Specific Jurisdiction over Defendants.

This Court also lacks specific jurisdiction over any of the Defendants. Unlike general jurisdiction, the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks and citations omitted). The exercise of specific jurisdiction requires that "the defendant's suit-related conduct ... create a substantial connection with the forum State." *Id.*

The Eleventh Circuit applies a three-step test for this inquiry. First, courts "consider whether the plaintiffs have established that their claims arise out of or relate to at least one of the defendant's contacts with the forum." *Waite*, 901 F.3d at 1313 (quotation marks and citations omitted). Second, courts "ask whether the plaintiffs have demonstrated that the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.* (quotation marks and citations omitted). "If the plaintiffs carry their burden of establishing the first two prongs, [courts] next consider whether the defendant has made a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation marks and citations omitted). As explained below, the Court lacks specific jurisdiction under this controlling test.

### a. Plaintiffs' Claims Do Not Arise Out of Defendants' Contacts with Florida.

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (citation and quotation omitted). "In other words, [the Court's] inquiry must focus on the direct causal relationship among the defendant, the forum, and the litigation." *Id.* (citation and quotation omitted). The court limits its inquiry to any contacts that "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (quotation omitted). Importantly, this "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (citation omitted). Thus, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Here, Plaintiffs cannot satisfy the test for specific jurisdiction because their claims do not arise out of any contacts with Florida by the Defendants. Plaintiffs allege that Privateer Holdings and Left Coast, purportedly through Cummings, conspired with the Saavedras to improperly obtain the assets of Saavy and that, to execute this scheme, Left Coast formed Eko to obtain the relevant assets. *See* Am. Compl. ¶¶ 41-53. However, Plaintiffs never allege any acts by Privateer Holdings, Left Coast, Cummings, or Eko that ***occurred in or were directed at Florida***. As discussed above, no Defendant is located or incorporated or domiciled in Florida, and none maintain offices or regularly conduct business in Florida. Rather, all of the alleged conduct occurred in or emanated from California or Washington, where Privateer Holdings, Left Coast, Cummings, and Eko are located. Plaintiffs do not allege Tilray or Privateer Evolution actually conducted any of the alleged

11

tortious acts at all—let alone any relevant acts directed at or occurring in Florida.  Instead, Plaintiffs assert that Tilray and Privateer Evolution are liable based solely on the alleged acts of Privateer Holdings under an alter ego theory.  *Id.* ¶¶ 61-69.

In fact, Plaintiffs have ***admitted*** that the relevant conduct occurred in California.  Before filing their complaint in Florida, Plaintiffs originally asked Defendants to accept service of a ***verified*** California complaint.  In that California complaint, Plaintiff Joseph M. Vazquez verified "[u]nder penalties of perjury," the following:

> (a) much of the conduct described herein occurred in [Los Angeles] county, and accordingly many of the causes of action alleged herein arose in Los Angeles County; (b) Plaintiffs are informed and believe, and thereon allege, that all Defendants reside in and/or conduct business in Los Angeles County; and (c) the contracts, documents and instruments that are the subject of the Loan to Own Scheme between Saavy Naturals and some of the Defendants described herein were executed in and to be performed in Los Angeles County.

Redler Decl. ¶ 15, Ex. A ¶ 39 & p. 44 (verification); Cummings Decl. ¶ 65, Ex. A ¶ 39 & p. 44 (verification).  In the complaint Plaintiffs filed in Florida, Plaintiffs deleted this statement and instead made the blanket, conclusory allegation—contrary to their verified California complaint— that "much of the conduct described herein occurred in Miami-Dade County or caused injury in Miami-Dade County, Florida."  Dkt. 1-1 at ¶ 39.  Plaintiffs do not and cannot, however, identify a single act by Defendants Tilray, Privateer Holdings, Privateer Evolution, Left Coast, Cummings, or Eko directed at Florida that gave rise to the causes of action in the Amended Complaint.[5]

The only connection between this case and Florida is that Plaintiffs happen to reside here. But the fact that "Plaintiff happens to be a Florida company is wholly deficient evidence of Defendants' contacts with Florida," and "the Supreme Court has rejected other plaintiffs' attempts to satisfy this prong based on their own contacts—rather than the defendants' contacts—with the

---

[5] While Plaintiffs may allege that Trimax, Saavy, or the Saavedras directed acts at Florida, this is irrelevant to the whether any Defendants to this motion directed acts at Florida.

forum." *PG Creative Inc. v. Affirm Agency, LLC*, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (Gayles, J.) (citing *Walden* 571 U.S. at 284) (dismissing for lack of specific jurisdiction). Because Plaintiffs' claims against Defendants do not arise out of or relate to any Defendants' contacts with Florida, this Court lacks specific personal jurisdiction over the moving Defendants.

### b.  Defendants Did Not Purposefully Avail Themselves of Florida Law.

Plaintiffs also cannot establish the second required element for specific jurisdiction because Defendants did not purposefully avail themselves of the privilege of conducting activities in Florida.  In cases involving intentional torts, there are two applicable tests for determining purposeful availment:  the "effects test" or the traditional minimum contacts test.  *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356 (11th Cir. 2013).  Plaintiffs cannot satisfy either test with respect to their claims against Defendants.

Under the traditional minimum contacts test, the Court assesses the "nonresident defendant's contacts with the forum state and ask[s] whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."  *Id.* at 1357.  To apply this conjunctive analysis, a court must "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria."  *Id.*

As discussed in the preceding section, no Defendant has any contacts with Florida that relate to Plaintiffs' causes of action.  Nor has any Defendant purposefully availed itself of the privileges of doing business within Florida.  Cummings has never resided in Florida, and the corporate Defendants are not incorporated in Florida, are not registered to do business there, and have no offices or employees in Florida.  *See* Moen Decl. ¶¶ 2-6; Redler Decl. ¶¶ 2-5, 9-13; Cummings Decl. ¶¶ 4-16, 24-34, 41-50.  As a result, Defendants could not reasonably anticipate

being haled into court in Florida based on transactions that occurred in California.  Plaintiffs cannot establish any of the three requirements for purposeful availment under the traditional minimum contacts test, much less all of them.

Plaintiffs likewise cannot satisfy the "effects test."  Under this test, a nonresident defendant's tortious act can establish purposeful availment only if "the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state."  *Louis Vuitton*, 736 F.3d at 1356 (citation, quotation, and brackets omitted).  "But due process still requires that the act creates a substantial connection with the forum."  *PG Creative Inc.*, 2019 WL 5684219, at *5 (citation, quotation, and brackets omitted).  Here, Plaintiffs allege that certain intentional torts by Defendants caused an alleged injury in Florida.  But none of these alleged torts were ***aimed at Florida***.  Rather, the tortious conduct and transactions are alleged to have occurred in California, involving California companies and individuals, and were directed at California-based Saavy, a Nevada corporation.  Plaintiffs cannot identify any specific tortious acts that Defendants targeted at Florida.  As such, Plaintiffs also cannot satisfy the effects test.

As Plaintiffs cannot satisfy either the minimum contacts test or effects test, Plaintiffs cannot establish that Defendants purposefully availed themselves of the privilege of conducting business in Florida.  Accordingly, this Court lacks specific jurisdiction over Defendants.

### c.  The Exercise of Jurisdiction in Florida Would Violate Traditional Notions of Fair Play and Substantial Justice.

Even if the Court were to conclude that Plaintiffs' claims arise out of Defendants' forum-related actions and that Defendants purposefully availed themselves of the privilege of conducting business in Florida, the Court must assess whether exercising personal jurisdiction violates the traditional notions of fair play and substantial justice.  For this inquiry, courts consider: (1) the

burden on the nonresident defendant; (2) the interests of the forum state; (3) plaintiff's interest in securing relief; (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292; *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009). The analysis of these factors proves that this Court should not exercise personal jurisdiction over Defendants.

The first factor—the availability of the evidence, witnesses, and parties—strongly favors dismissal, as virtually all the relevant witnesses and evidence in this case are located in California. As noted above, Left Coast, Eko, Cummings, the Saavedras, and Equitable Transitions are all located in California. Cummings Decl. ¶¶ 4, 20, 23, 37-38, 40, 57, 61; Am. Compl. ¶¶ 31-33. Privateer Holdings and Privateer Evolution are based in Seattle, Washington, and Tilray is based in British Columbia. Moen Decl. ¶ 1; Redler Decl. ¶¶ 1, 8. As a result, it would be incredibly burdensome for these six Defendants to litigate this case on the other side of the country in Florida.

The second factor also weighs against jurisdiction in Florida. California has far more interest in this case because the majority of the parties are located in California, the alleged acts occurred in California (as Plaintiffs admitted in their verified California complaint), and the general assignment by Saavy was made pursuant to California law. Additionally, the relevant contracts were executed and performed in California and provide for the application of California law. *See, e.g.*, Am. Compl., Ex. K (Dkt. 58-11); Ex. L (Dkt. 58-12); Ex. M (Dkt. 58-13). Indeed, the Amended Complaint challenges the legitimacy of an assignment for the benefit of creditors made under California statutory law.

With respect to the third factor, effective relief for Plaintiffs is undisputedly available in California. Indeed, Plaintiffs themselves recognized this when they executed a verified California

complaint, providing for venue and jurisdiction in California, and asked Defendants to accept service of that California complaint.  *See* Redler Decl. Ex. A; Cummings Decl. Ex. A.

The fourth factor concerns whether the forum state is the most efficient place to litigate, the location of the witnesses, where the underlying wrong occurred, the governing law, and whether jurisdiction is necessary to prevent piecemeal litigation.  The fifth factor concerns the impact on shared interests in social policies.  As explained in Section III.B. below, these efficiency considerations all weigh against jurisdiction in Florida and strongly favor a California forum.

The applicable factors show the exercise of personal jurisdiction over Defendants would be unreasonable here, and, therefore, the Court should dismiss the claims against Defendants.

### 3.   The Shield Doctrine Precludes Personal Jurisdiction over Cummings.

Additionally, under the shield doctrine, Plaintiffs cannot establish personal jurisdiction over Cummings in Florida.  It is well-settled in Florida that personal jurisdiction does not lie against a corporate officer absent sufficient allegations that they did business or committed a tort in Florida in their capacity as individuals, as opposed to corporate officers.  *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162, 1170-71 (S.D. Fla. 1981) ("If the law were otherwise, any corporate employee could be forced to defend a suit in the Florida courts, regardless of what the individual did with respect to his employer's business so long as his employer engaged in business in this state").  In *Doe v. Thompson*, 620 So. 2d 1004 (Fla. 1993), the Florida Supreme Court adopted the "corporate shield doctrine," which does not permit jurisdiction over a corporate officer who has no contacts with the state in his individual capacity.  *Id.* at 1005 (dismissing complaint against corporate officer where his affidavit stated he did not "personally" do anything in Florida).

"[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him …. Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  Where

plaintiff does not allege that defendant committed a tortious act in his individual capacity, the court may not exercise jurisdiction over him.  *Health Sci. Distribs., Co. v. Usher-Sparks*, 2012 WL 921338, at *7 (M.D. Fla. Feb. 29, 2012), *report and recommendation adopted*, 2012 WL 919812 (M.D. Fla. Mar. 19, 2012) (dismissing for lack of personal jurisdiction where plaintiff failed to establish the defendants, in their individual capacities, had sufficient contacts with Florida).

Plaintiff may try to argue that the corporate shield doctrine does not apply where they allege the corporate officer committed an intentional tort.  *See Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012).  But that exception only applies where the alleged tortious act was committed by the officer while "physically present" in Florida.  *See Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675, 678 (11th Cir. 2009) (affirming dismissal of claims against corporate officers because there was no allegation that the officers were physically present in Florida when they participated in a tort).  Plaintiffs do not and cannot allege that Cummings committed any tortious act while *physically present* in Florida.  Rather, as Cummings' declaration makes clear, he was never physically present in Florida during the time relevant to Plaintiffs' claims.  Cummings Decl. ¶¶ 4-16.  For this additional reason, the Court lacks personal jurisdiction over Mr. Cummings.

## B.   In the Alternative, the Court Should Transfer this Action to the Central District of California Pursuant to 28 U.S.C. § 1404(a).

If the Court does not dismiss for lack of personal jurisdiction, it should transfer this action to the Central District of California "[f]or the convenience of parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (citation omitted).

To determine whether a case should be transferred pursuant to section 1404, courts apply a two-prong test.  "First, courts look to whether the case could have been brought in the alternative venue."  *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019).  Here, Plaintiffs could have originally brought their claims in the Central District of California, as Plaintiffs admitted and affirmatively alleged in the verified California complaint they originally sent Defendants, before reversing course and filing in Florida.

"Second, courts evaluate whether convenience and the interest of justice require transfer." *Id.* (citation and quotation omitted).  Under the second prong, courts weight the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (citation and quotation omitted).  These factors weigh heavily in favor of transfer.

Nearly all the witnesses, corporate representatives, and documents are located in California, where Left Coast, Eko, Cummings, Equitable Transitions, the Saavedras, Trimax, and Saavy all are located.  California is a far more convenient forum for Tilray, Privateer Holdings, Privateer Evolution, Left Coast, Eko, Cummings and their witnesses.  By contrast, the *only* parties or witnesses located in Florida are Plaintiffs, who were not at all involved in the transactions at issue but seek relief as creditors or shareholders of a Nevada entity operating in California.  *See* Cummings Decl. ¶¶ 54-64.  The first three factors heavily favor California.

The fourth factor also favors California because, as Plaintiffs admitted in their verified California complaint, Los Angeles County, California is the locus of the operative facts.  *Id.*  The fifth factor likewise favors transfer because a California court will be better able to compel the

4830-8695-0332, v. 1

attendance of unwilling witnesses such as the Saavedras and Equitable Transitions, who are located in California and have not appeared in this action. *Id.* The sixth factor is neutral, as certain defendants likely have less means than Plaintiffs, while others may have more.

The seventh factor favors transfer to California because the agreements underlying the alleged loan to own plan and Saavy's assignment for the benefit of creditors all provide for and require the application of California law, *see, e.g.*, Am. Compl., Ex. K (Dkt. 58-11); Ex. L (Dkt. 58-12), and, under a choice-of-law analysis, California law will govern the acts that all occurred in California. The eighth factor is neutral. While weight may be accorded to a plaintiff's choice of forum, Plaintiffs here ***admitted and affirmatively alleged under penalty of perjury*** that the proper forum for this dispute is a California court because the relevant conduct occurred in California. The ninth factor favors transfer to the Central District of California. Trial in the Central District of California will provide better access to proof and reduce expense for all parties.

The great weight of the relevant factors heavily favors transfer. Accordingly, the Court should transfer this action to the Central District of California.

## IV.   CONCLUSION

For the above reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims against Defendants for lack of personal jurisdiction or, in the alternative, transfer this action to the Central District of California.

## V.     MEET AND CONFER

Counsel for Defendants have conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this Motion and have been unable to reach such a resolution.

DATED this 18th day of May, 2020.

4830-8695-0332, v. 1

s/W. Barry Blum _____
Paul J. Battista, Esq.
Florida Bar No. 379301
PBattista@gjb-law.com
W. Barry Blum, Esq.
Florida Bar No. 379301
BBlum@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
100 SE 2nd Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300


Thomas M. Geher (admitted *pro hac vice*)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080

*Counsel for Defendants Left Coast Ventures,*
*Inc, Eko Holdings LLC, and Brett Cummings*

s/Brian W. Toth _____
Brian W. Toth
Florida Bar No. 57708
btoth@gsgpa.com
Freddy Funes
Florida Bar No. 87932
ffunes@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com


John A. Goldmark (admitted *pro hac vice*)
Lauren Rainwater (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington  98104-1610
Telephone:  (206) 622-3150

*Counsel for Defendants Tilray, Inc., Privateer*
*Holdings, Inc., and Privateer Evolution, LLC*

4830-8695-0332, v. 1